```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____                │
│ DATE FILED:  9/1/2016                │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ALEXANDER HALL,                             :

                        Petitioner,       :

                                     :       15 Civ. 2559 (LGS)(KNF)

            -against-                 :

                                     :       **ORDER AND OPINION**

WILLIAM LEE,                                :

                        Respondent.   :

------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      Petitioner Alexander Hall brings this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for second-degree manslaughter, second-degree criminal possession of a weapon and two counts of third-degree assault (the "Petition"). This case was referred to the Honorable Kevin Nathaniel Fox, who filed a Report and Recommendation (the "Report") on August 11, 2015. The Report recommends that the writ be denied. Petitioner timely submitted objections to the Report (the "Objections"). For the following reasons, the Report is adopted, and the Petition is denied.

## I.  BACKGROUND

      The facts relevant to the Petition are set out in the Report and summarized here. Subsequent procedural history is also provided in the Report.

      On October 11, 2005, Hall and his friends Chris Ulanga, Sabin Abad and Javier Gonzalez visited Club Viva, located in New York, New York. Around 3:30 a.m., on October 12, 2005, Abad and a club promoter got into an argument, which spilled outside the club. After someone hit Abad with a broken bottle, causing him to bleed, Gonzalez and Abad left in Gonzalez's car, and Ulanga and Hall left in Ulanga's car. While driving, Gonzalez received a telephone call from Hall, who said that he was going back to the club and asked that Gonzalez and Abad go to

Hall's apartment and wait for him.  Telephone billing records show that the four men were in contact between 3:45 a.m. and 4:11 a.m. on October 12, 2005.

After Club Viva closed at around 4:00 a.m., Annette Rodriguez and Tabitha Perez were standing under a scaffold outside the club with their friends.  Suddenly, a gunshot rang out. Rodriguez looked up and saw Hall standing about a half block to the south of her.  Rodriguez observed that Hall was young, with dark hair and eyes, light complexion and distinctive eyebrows.  As three more shots sounded, Rodriguez saw three sparks come from the gun Hall was holding.  She then ran into the street and fainted.  After she regained consciousness, she found Perez lying on the ground with a gunshot wound.  Rodriguez took Perez to a hospital, where Perez died.

Jeremy Soto was also outside the club with a group of people when the shots were fired. Soto heard the gunshots but never saw the shooter.  As he and some friends drove away from the scene, Soto realized that he had been shot in the calf and that one of his fingers had been grazed by a bullet.  His friends took him to a hospital.  Ruben Batista, a homeless man who was lying on the street outside of the club, also sustained a gunshot wound and was treated at a hospital.

On the evening of October 12, 2005, Hall told Abad that "he had shot [a gun] in front of the club" and asked Abad not to say anything to the police if they questioned him.  The following day Hall told Gonzales that he had done "a bad thing" and that "he went back to the club and shot at a crowd."  When Gonzalez asked why, Hall responded that he did not know, but then added that he was drunk.

Also on October 12, 2005, Rodriguez viewed a lineup but did not recognize anyone.  On November 29, 2005, she viewed another lineup that included Hall.  Rodriguez initially did not state that she recognized Hall, but after Hall's attorney left the room, she identified Hall as the

shooter.  She said that she had not identified Hall immediately because she was intimidated by the presence of Hall's attorney and was afraid of putting an innocent man in jail.

Hall was charged with second-degree murder, four counts of first-degree assault and second-degree criminal possession of a weapon.  Prior to trial, Hall made a motion to admit expert testimony regarding the reliability of eyewitness identification, but the court denied the motion.  At trial, Rodriguez identified Hall as the shooter.  The prosecution proffered telephone cell site records of Hall, Abad, Ulanga and Gonzalez.  The prosecution also proffered computer-generated maps and videos that summarized the cell site records and were prepared by a paralegal in the district attorney's office.  Hall objected to this evidence, asserting a lack of foundation for the technology used.  The objection was overruled.

A jury convicted Hall of second-degree manslaughter, second-degree criminal possession of a weapon and two counts of third-degree assault.  He was sentenced to concurrent terms of five to 15 years imprisonment on the manslaughter count, one year on the assault counts and 15 years on the weapon possession count.

## II.  LEGAL STANDARD

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  The district court "may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law."  *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b)); *see also Thomas v. Arn*, 474 U.S. 140, 149 (1985).

The court must undertake a de novo review of any portion of the report to which a specific objection is made on issues raised before the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir. 1997).  "When a party makes only conclusory or general objections, or simply reiterates the original arguments made below, a court will review the report strictly for clear error."  *Minto v. Decker*, 108 F. Supp. 3d 189, 192 (S.D.N.Y. 2015).  Even when exercising de novo review, "'[t]he district court need not . . . specifically articulate its reasons for rejecting a party's objections . . . .'"  *LaBarbera v. D. & R. Materials Inc.*, 588 F. Supp. 2d 342, 344 (E.D.N.Y. 2008) (quoting *Morris v. Local 804, Int'l Bhd. of Teamsters*, 167 F. App'x 230, 232 (2d Cir. 2006) (summary order)).

Where a state court has reached the merits of a federal claim, habeas relief under § 2254 may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1), (2).  State court factual findings "shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.* § 2254(e)(1).  "A state court's determination that a claim lacks merit" is not unreasonable "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Ramos v. Racette*, 726 F.3d 284, 287–88 (2d Cir. 2013) (quoting *Harrington v. Richter,* 562 U.S. 86, 101 (2011)).

**III. DISCUSSION**

The Petition seeks habeas relief on three grounds:  (1) the trial court violated Hall's due process rights when it admitted without a proper foundation computer-generated maps and

videos of cell sites, which were prepared by a paralegal from the district attorney's office; (2) the trial court denied Petitioner's ineffective assistance of counsel claim in his post-conviction Criminal Procedure Law ("CPL") § 440.10 motion in contravention of clearly established federal law; and (3) the appellate court erred when it denied Petitioner's claim related to the court's refusal to admit an expert witness on eyewitness identification in violation of his right to due process.  The Report correctly rejects each of these claims.

### A.  Evidentiary Rulings

The Petition claims that two evidentiary rulings at trial denied Hall of due process of law. First, the Petition claims that the trial court erred by admitting computer-generated maps and videos of telephone cell sites into evidence without a proper foundation.  Second, the petition claims that the trial court erred by refusing to admit expert witness testimony on the subject of eyewitness identification.  The Report recommends denying both claims because they concern state-law errors, not federal constitutional rights, and did not so infuse Hall's trial with unfairness as to deny him due process of law.  Hall objects that the evidentiary rulings are reviewable because they implicate his right to due process.

"[S]tate trial court evidentiary rulings generally are not a basis for habeas relief."  *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). Whether evidence was incorrectly admitted or excluded under state law "is no part of a federal court's habeas review of a state conviction" because "federal habeas corpus relief does not lie for errors of state law."  *Estelle*, 502 U.S. at 67 (internal quotation marks omitted).  Only claims that the evidentiary ruling was "an error of constitutional dimension" are cognizable on federal habeas review.  *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir. 1988); *see also Evans v. Fischer*, 712 F.3d 125, 133 (2d Cir. 2013) (to prevail on habeas review, petitioner needed to

"demonstrate that the state court's erroneous conclusions about New York evidence law were so egregious as to implicate the Fourteenth Amendment's guarantee of due process").  Where, as here, the petitioner argues that the evidentiary ruling violated his right to due process, the question is whether the claimed error "deprived [him] of a *fundamentally fair* trial."  *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (quoting *Rosario*, 839 F.2d at 925) (alteration in original).

Here, the Appellate Division reviewed the record and concluded that the trial court did not err with respect to either evidentiary ruling.  *People v. Hall*, 926 N.Y.S.2d 514, 517 (App. Div. 1st Dep't 2011).  Regarding the maps and videos, the Appellate Division held that "[t]he trial court properly exercised its discretion in admitting computer-generated evidence."  *Id.*  Regarding the proposed expert testimony, the Appellate Division held that "the trial court properly exercised its discretion in denying defendant's request to call an expert on eyewitness identification" because "there was extensive evidence connecting defendant to the crime besides the identification."  *Id.*

The state courts' conclusion was not unreasonable.  The computer-generated maps and videos were demonstrative of other evidence that already had been admitted, and the prosecution offered foundation testimony regarding how the maps and videos had been created.  Thus, the maps and videos were admissible under New York law.  *See People v. D'Lucca*, 674 N.Y.S.2d 47, 47 (App. Div. 2d Dep't 1997) (no error in admitting photographs that elucidated and corroborated other evidence).  "[E]ven assuming there was error, the evidence was not so extremely unfair that its admission violate[d] fundamental conceptions of justice."  *Vega*, 669 F.3d at 126 (alteration in original) (internal quotation marks omitted) (holding that admission of petitioner's uncharged crimes and  "Enforcer" tattoo did not warrant federal habeas relief);

*accord Evans*, 712 F.3d at 135 (holding that admission of hearsay statements, which added little of an incriminating nature to declarant's in-court testimony, did not warrant federal habeas relief).

It was similarly within the trial court's discretion under New York law to exclude petitioner's expert witness testimony because the eyewitness identification of petitioner was corroborated by other evidence.  *See People v. Santiago*, 958 N.E.2d 874, 880–82 (N.Y. 2011). Again, even assuming there was error under New York law, "there is no Supreme Court law holding that a defendant in a criminal case has a federal constitutional right to call at trial an expert in eyewitness identifications."  *Perez v. Graham*, No. 13 Civ. 1428, 2014 WL 523409, at *10 (S.D.N.Y. Feb. 5, 2014); *accord Washington v. Schriver*, 90 F. Supp. 2d 384, 388–89 (S.D.N.Y. 2000) (holding that exclusion of expert testimony regarding suggestibility of child witnesses did not warrant federal habeas relief).  The Report correctly concludes that the Petition fails to establish that the evidentiary rulings denied Hall's right to due process, and those claims are rejected.

### B.  Ineffective Assistance of Counsel

The Petition claims that Hall received ineffective assistance of counsel due to his trial counsel's:  (1) "failure to research proper lesser-included offenses for depraved indifference assault at the pretrial stages"; (2) "failure to request a lesser-included offense for possession of a weapon at various stages of trial"; and (3) failure to argue that the verdict was repugnant before the jury was discharged and subsequent "attempt to clean up his errors in a post-conviction CPL 330.30 motion."  The Petition further claims that Hall's "right to due process was violated in the proceeding of his [CPL] 440.10 motion" regarding ineffective assistance of counsel because "the trial court erroneously asserted that Hall did not present an affidavit from his attorney addressing

his strategic decisions" and "Hall was never afforded an opportunity to reply to any factual allegations the people made or to highlight their concession to certain parts of his motion."

The Report recommends denying the ineffective assistance claim because the arguments Hall's counsel failed to make were meritless and would not have changed the outcome. The Report further recommends denying the embedded due process claim because the Petition failed to articulate a liberty or property interest of which the trial court deprived Hall in the course of denying his CPL § 440.10 motion. Hall objects that the Report's analysis repeats the errors of the state courts and fails to recognize the cumulative effect of his trial counsel's alleged mistakes.

To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must demonstrate that his counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," so a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Second, a petitioner must demonstrate that the deficiency prejudiced him. *Id.* at 691-692. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To satisfy the second prong, a defendant must establish that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Fulton v. Graham*, 802 F.3d 257, 265 (2d Cir. 2015) (quoting *Strickland*, 466 U.S. at 694).

Here, the trial court concluded that Hall did not demonstrate that his trial counsel rendered ineffective assistance. The trial court rejected Hall's argument about his trial counsel's failure to request a lesser-included weapon offense because the affidavit Hall submitted from his trial counsel did not address that failure. The trial court also made clear that it would have rejected any such request because no reasonable view of the evidence would support the conclusion that Hall possessed the gun but did not have the intent to use it unlawfully against another, as would have been required to submit fourth-degree criminal possession of a weapon as a lesser-included offense.

The trial court's decision denying Hall's ineffective assistance of counsel claim was not unreasonable. The evidence regarding Hall's alleged actions leading up to the shooting -- leaving the club and then returning with a weapon -- suggested a deliberate intention to use the gun unlawfully against one or more people at the club. Thus, the trial court's conclusion that a request for a lesser-included weapon offense would have been rejected as meritless was not unreasonable. *See* CPL § 300.50(1) ("If there is no reasonable view of the evidence which would support [a finding that the defendant committed the lesser offense but not the greater], the court may not submit such lesser offense."). "[T]he failure to make a meritless argument does not rise to the level of ineffective assistance . . . ." *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995).

The trial court also rejected Hall's argument about his trial counsel's failure to object to the verdict as repugnant because the verdict was not, in fact, repugnant. This conclusion is not unreasonable. "[A] finding of guilt on inconsistent counts results in a repugnant verdict. For example, a person cannot simultaneously intend to cause another person's death and at the same time consciously disregard a substantial risk that death will occur." *People v. Baker*, 926 N.E.2d

240, 271 (N.Y. 2010).  The verdict in Hall's case was not repugnant because Hall could have acted intentionally as to the result of possessing the gun and recklessly as to the results of causing the death of another and causing physical injury to another.  *See People v. Trappier*, 660 N.E.2d 1131, 1133 (N.Y. 1995) ("A defendant could certainly intend one result . . . while recklessly creating a grave risk that a different, more serious result . . . would ensue from his actions.").  Because the argument that the verdict was repugnant lacks merit, the failure of Hall's trial counsel to raise the argument "does not rise to the level of ineffective assistance." *Kirsh*, 54 F.3d at 1071.

The trial court did not address Hall's argument about his trial counsel's failure to research proper lesser-included assault offenses because he did not raise that claim in front of the trial court.  This argument in any event also falls short of the standard for ineffective assistance of counsel.  The alleged failure resulted in Hall's trial counsel requesting second-degree assault as a lesser-included offense of first-degree assault and being corrected by the court clerk that the proper lesser-included offense is third-degree assault.  Even assuming that trial counsel's mistake reflected a lack of preparation and not a simple misstatement, Hall was not prejudiced because the trial court instructed the jury on, and Hall was convicted of, third-degree assault.  Without a showing of prejudice, the argument fails the second prong of *Strickland*.  *See* 466 U.S. at 691.

The Petition's due process claim based on the handling of Hall's CPL § 440.10 motion is not cognizable on federal habeas review.  "[A]lleged errors in a postconviction proceeding are not grounds for § 2254 review because federal law does not require states to provide a post-conviction mechanism for seeking relief." *Word v. Lord*, 648 F.3d 129, 132 (2d Cir. 2011).

In his Objections to the Report, Hall states that his ineffective assistance arguments are "cumulative," meaning that when the alleged errors are viewed together they show that his trial

10

counsel consistently neglected the weapon possession charge before and during trial. This argument falls short under both prongs of *Strickland*. Under the first prong, the Petition has not demonstrated that trial counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Only trial counsel's request for second-degree assault as a lesser-included offense of first-degree assault was legal error. That error did not relate to the weapon offense and, as noted above, could have been a simple misstatement. The other alleged errors -- not requesting a lesser-included weapon offense and not arguing that the verdict was repugnant -- proved to be sound legal judgments in accordance with the trial court's view on the issues. And because the trial court made clear that it would have rejected both arguments, the claim also fails under the second prong of *Strickland*, which requires a defendant to show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Fulton*, 802 F.3d at 265 (quoting *Strickland,* 466 U.S. at 694). The Report correctly concludes that the Petition fails to satisfy the standard for ineffective assistance of counsel, and those claims are rejected.

## IV. CONCLUSION

For the reasons stated above, the Report is ADOPTED and the Petition for a writ of habeas corpus is DENIED. As Petitioner has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2); *Hoffler v. Bezio*, 726 F.3d 144, 154 (2d Cir. 2013). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962).

The Clerk of Court is respectfully directed to mail a copy of this Opinion to Petitioner

Alexander Hall and close this case.

SO ORDERED.

Dated: September 1, 2016
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE